Serafin CASTILLO, Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 94–1040.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 3, 1994.

Decided Aug. 29, 1994.

Frederick F. Cohn (argued), Chicago, IL, for petitioner-appellant.

Ronald S. Safer, Debra Riggs Bonamici (argued), Office of the U.S. Atty., Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for respondent-appellee.

Before POSNER, Chief Judge, and BAUER and KANNE, Circuit Judges.

POSNER, Chief Judge.

The defendant was convicted of extortion, and we affirmed his conviction, in the process rejecting, though with misgivings, the contention that he had not made an effective waiver of his right to be represented by a different lawyer from his codefendant. 965 F.2d 238, 240–43 (7th Cir.1992). Castillo, our defendant, had assisted the codefendant,

Grenados, in a blackmail scheme thinly disguised as the sale of a newspaper owned by Grenados. The newspaper had published defamatory articles about the owner of a rival newspaper. She wanted to put a stop to the articles, and Grenados through Castillo offered to comply for $26,000. The lawyer that the two defendants had hired told the district judge that he had explained to his clients the risks of joint representation and that both had still wanted him to represent them. As corroboration he submitted a written waiver signed by both defendants. The judge then asked the defendants a series of seven questions—variations on the theme of, did they want to be represented by this lawyer?—to which they dutifully answered "yes." The perfunctory nature of the inquiry, coupled with Castillo's requesting and being granted the services of a Spanish interpreter at the trial, were what led us to express doubts as to the voluntariness of his waiver of the right to be represented separately. But upon the record before us on Castillo's appeal from his conviction—a record that so far as the issue of voluntariness is concerned contained nothing more than we have just recounted—we could not conclude that the waiver had been involuntary. We left open the question whether Castillo could raise the issue of voluntariness anew by instituting a postconviction proceeding. *Id.* at 243.

This is that proceeding. 28 U.S.C. § 2255. Castillo's motion to vacate his conviction and sentence is supported by an affidavit in which he attests that he did not understand the waiver because it was in English and not translated for him, that he signed the waiver and answered the judge's questions "yes" because his lawyer told him to do so, and that he had wanted to testify in his defense but his lawyer had told him not to do so because it would hurt Grenados.

At a routine status call on Castillo's section 2255 proceeding, the district judge surprised everybody by calling to the stand the probation officer who had interviewed Castillo for the purpose of completing the presentence investigation report. Castillo was not present at the status call. The judge asked the probation officer, over the vigorous objection of Castillo's counsel, to testify concerning Castillo's ability to speak English. She testified that at the first interview Castillo claimed to speak English and declined to have an interpreter, that at subsequent interviews and on the phone he had spoken to her in English, but that when she had interviewed him during a "home visit" (held actually in a restaurant), an interpreter was present and the interview was conducted in Spanish. On cross-examination by Castillo's lawyer (the direct examination had been conducted by the judge himself, and the prosecutor had asked no questions), the probation officer acknowledged not recalling whether Grenados had been present at the interviews or whether he had helped Castillo fill out the worksheets (which were in English) that he was required to furnish to assist her in completing the PSI report. Castillo's lawyer requested an opportunity for his client to testify. This was denied but Castillo was permitted to submit a supplemental affidavit. In it he claimed that Grenados (who vanished after the trial, and hasn't been seen since) had indeed been present at the various interviews and had translated for him, and also had assisted him with the worksheets.

The district judge concluded that Castillo knew English and that his waiver of his right to separate representation had been voluntary. He relied on his assessment of Castillo's credibility in answering the seven questions (adding pointedly that "the Seventh Circuit's uncertainty as to how well the defendant could understand English is not shared by the trial court") on "personal observations" (not further specified) of Castillo during his appearances in court, on Castillo's ability to run a business (he owns a grocery store), on the unquestioned fact that Castillo speaks at least some English, on the fact that the Spanish word for "conflict"—"conflicto"—is similar to the English word, and on the testimony of the probation officer at what the judge described as an "evidentiary hearing." At the argument of the appeal, the government's able lawyer conjectured that by "personal observations" the district judge may have meant that he saw Castillo nodding when his lawyer spoke to him at counsel table during the trial.

The district judge decided Castillo's section 2255 motion on the merits, and the government does not argue that he should not have done so—that the motion for post-conviction relief is barred by res judicata, law of the case, or the doctrine of waiver. All such defenses have therefore been waived, *Buckley v. Illinois Judicial Inquiry Bd.*, 997 F.2d 224, 227 (7th Cir.1993); *United States v. Caputo*, 978 F.2d 972, 975 (7th Cir.1992), so we proceed to the merits.

■ No one denies that Castillo knows some English. The question is whether he knows enough to have understood the written waiver, his lawyer's explanation of the waiver to him (if any—the lawyer has not been heard from in this proceeding), and the judge's seven questions. The adequacy of Castillo's linguistic command is a question of fact, and we must affirm unless the judge's finding is clearly erroneous; and in making this judgment we must recognize and accept that the trial judge's determinations of credibility are normally binding on the appellate court.

But we cannot evaluate the correctness of the judge's finding without considering the reasons he gave for it, unless the finding is so obviously correct that no purpose would be served by insisting on a statement of reasons. Although the judge may well have been correct that Castillo's command of English is sufficient to have enabled him to make a voluntary waiver of separate counsel, we are forced to the unhappy conclusion that the reasons the judge gave for reaching his conclusion are inadequate, either separately or together, to justify it. Take first the judge's in-court observations of Castillo, to which we naturally are disposed to give the greatest weight. All that Castillo's answers to the seven questions prove is that he can say the word "yes." If it is true as his affidavit attests that he was answering "yes" to each question on the instruction of his lawyer, there is no way in which the judge could determine the contrary by observing Castillo say "yes" seven times. It is noteworthy that, so far as appears, the *only* word Castillo has ever said in the hearing of the district judge is "yes." That is a slim basis for inferring that Castillo has a decent enough knowledge of English to have understood the waiver document or the judge's questions. Even slimmer is "conflicto." Every Indo–European language has some words that are recognizable by a person who knows another Indo–European language. For example, the words "hand" and "finger" are identical in German and in English. It doesn't follow that if you know German you know English, even if you just want to have a conversation about fingers and hands. *Richter Norgle hat zwei Hände mit zehn Finger.* Can every English speaker understand what "*La palabra conflicto en inglés es 'conflict'*" means?

Another *non sequitur* on which the judge relied is owning a grocery store in Chicago and having a good enough knowledge of English to navigate in a federal court. Chicago's ethnic neighborhoods contain a large number of people who have lived in this country for many years (Castillo immigrated in 1968) and operate retail stores catering to their ethnic community, yet know little or even no English.

■ That leaves as the only strut beneath the district judge's decision the status call that molted unexpectedly into an "evidentiary hearing." If deemed an evidentiary hearing it violated the most elementary precepts of due process of law, for one of the parties had no notice and no opportunity to be heard. The judge was troubled by this possibility but disposed of it by classifying the probation officer's testimony as an "oral affidavit." But a determination of credibility cannot be made on the basis of an affidavit. That is, a judge cannot take two affidavits which swear to opposite things and say, "I find one of the affidavits more credible than the other, and therefore I shall accept it as true." The purpose of inviting affidavits, as in a summary judgment proceeding, is to determine whether there is a dispute over a material issue of fact, Fed.R.Civ.P. 56(e); *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1001 (7th Cir.1994), rather than to enable the judge to resolve the dispute by picking one affidavit over another that contradicts it, as the judge did here. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986);

446

*Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir.1992); *Sally Beauty Co. v. Nexxus Products Co.,* 801 F.2d 1001, 1005 (7th Cir.1986). It is true that the judge did not rely exclusively on the probation officer's affidavit. But not only was the other evidence concerning Castillo's possessing a good enough knowledge of English to waive his right to separate representation very weak, as we have seen; the judge did with the probation officer's affidavit what he was not permitted to do, and determined that the affidavit, though contradicted by another affidavit, was true. The judge did this of course because the probation officer didn't *really* give an affidavit; she testified; the judge heard her testify and believed her. But you cannot make a responsible determination of credibility after hearing only one adversary and refusing the other an opportunity to testify and try to convince you that he is more credible.

■ The findings of waiver being inadequate, the case must be remanded—unless the government is right that, even if Castillo did not waive his right to separate counsel, he has failed to show that his lawyer's conflict of interest adversely affected the lawyer's representation of him. That is the standard under *Cuyler v. Sullivan,* 446 U.S. 335, 348–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980), and the one that Castillo invokes. It is met here. His affidavit asserts without contradiction that at trial his lawyer told him not to testify *because it would hurt Grenados,* the codefendant represented by the same lawyer. In other words, the lawyer based advice to one of his clients not on what was good for that client but on what was good for his other client. *See id.* at 349, 100 S.Ct. at 1718–19; *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Thus (if Castillo is believed) the conflict of interest actually rather than merely potentially affected the representation of the defendant adversely, in which event the conviction cannot stand. *United States v. Roth,* 860 F.2d 1382, 1389 (7th Cir.1988).

■ The government does not contest the affidavit. Its argument is that the error was harmless, that it would not have helped Castillo. Harmless error is not the test in a case of unconstitutional joint representation, *Glasser v. United States, supra,* 315 U.S. at 76, 62 S.Ct. at 467–68, and even if it were we could not affirm Castillo's conviction on that basis. We cannot see how Castillo would have been hurt by testifying, and he might have been greatly helped. Whatever the law says, juries are apt to draw a negative inference from a defendant's failure to testify. Castillo—the go-between, not the principal—could have testified that he thought that Grenados was genuinely trying to sell his newspaper to the blackmail victim. The testimony might well have been disbelieved, because the victim and the FBI agent testified to conversations highly suggestive of the fact that Castillo knew that he was helping Grenados to commit blackmail. See 965 F.2d at 239–40. But even if their testimony was fully believed, it did not prove conclusively that Castillo knew this; conceivably he might have convinced the jury that he was simply following directions from Grenados that might for all he knew have been aimed at completing a legitimate business transaction with the victim, the publisher, as we have said, of a rival newspaper to Grenados's.

The denial of Castillo's section 2255 motion must be vacated and the case remanded for further proceedings, presumably including a full evidentiary hearing, consistent with this opinion. Because the district judge appears to have committed himself to the view that Castillo has an adequate command of English, we exercise our authority under 7th Cir.R. 36 to direct that the further proceedings be conducted before a different district judge.

VACATED AND REMANDED, WITH DIRECTIONS.