**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 3 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LUIS MANUEL GONZALEZ,

    Defendant - Appellant.

No. 03-5118
(D.C. Nos. 99-CR-66-C and
02-CV-759)
(D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, ANDERSON** and **LUCERO**, Circuit Judges.

Luis Manuel Gonzalez appeals from the denial of a 28 U.S.C. § 2255 petition to vacate his sentence on the ground that his counsel's erroneous advice coerced his guilty plea. Because the record does not conclusively demonstrate that Gonzalez's claim is without basis, we take jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a), and **REVERSE** and **REMAND** for an evidentiary hearing.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I

Gonzalez, a Mexican national with limited conversational English, was charged in May 1999 with conspiracy to possess with intent to distribute and distribution of methamphetamine and cocaine in violation of 21 U.S.C. §§ 841 and 846. In August 1999, a superseding indictment was issued listing Gonzalez as the principal supplier of methamphetamine for a distribution network.

Cindy Cunningham, an assistant federal public defender, was appointed to defend Gonzalez. According to Gonzalez, Cunningham twice entered appearances for him to plead not guilty. On October 1, 1999, Cunningham, who did not speak any Spanish, met with Gonzalez for the first time with an interpreter to discuss changing his plea to guilty. The meeting lasted no longer than one hour[1] and took place shortly before the plea hearing held later that day. Lorayne Hawkins, the interpreter for that meeting, states that she does not recall Cunningham reviewing the superseding indictment or the sentencing guideline manual with Gonzalez, and recalls translating into Spanish only a portion of the English version of the Petition to Enter Plea of Guilty.

---

[1] According to Gonzalez, the meeting lasted fifteen minutes. Federal public defender records show an interpreter bill for one hour, however the interpreter stated that although she bills in increments of one hour, she may have met for as little as fifteen minutes with Gonzalez.

At the plea hearing, Gonzalez changed his plea to guilty. Before accepting the guilty plea, the district court asked Gonzalez if he was aware of the charges in the indictment and satisfied with his counsel; Gonzalez answered both questions in the affirmative. The court informed Gonzalez that he would be sentenced according to the Sentencing Guidelines and could receive a sentence ranging from ten years to life in prison.

Gonzalez's presentence report indicated a total offense level of 50, which was comprised of a base offense level of 38 and additional enhancements for: (1) possession of a firearm; (2) the unlawful importation of listed chemicals; (3) his role as an organizer; (4) the use of children to commit the offense; and (5) obstruction of justice based on his alleged attempt to bribe and physically harm a witness while in jail. According to Gonzalez, on November 22, 1999, Cunningham informed Gonzalez that he would receive life in prison. Gonzalez contends that he was outraged and called Cunningham a liar; he claims that he agreed to change his plea to guilty only because Cunningham assured him his sentence would be no longer than fourteen years.

At the sentencing hearing in April 2000, Gonzalez informed the court that Cunningham told him he would receive a fourteen-year sentence, to which Cunningham responded: "I certainly know better than to make any promises of any amount of time to any client." (R. at 180.) The district court reminded

Gonzalez that the court informed him of the range of his possible sentence. Gonzalez was sentenced to life in prison.

On direct appeal, Gonzalez argued, inter alia, that the district court violated Rule 11 of the Federal Rules of Criminal Procedure, which requires a court to determine that a plea "is voluntary and did not result from force, threats, or promises," Fed. R. Crim. P. 11(b)(2), in part because he changed his plea to guilty in reliance on Cunningham's representation that he would only be sentenced to fourteen years. We upheld the conviction and sentence, concluding that "the trial court's conduct of defendant's plea hearing was in conformity with Rule 11 and that defendant knowingly, intelligently, and voluntarily pled guilty to the indictment as charged." United States v. Gonzalez, No. 00-5083, 2001 WL 435241, at **3 (10th Cir. April 30, 2001) (Gonzalez I).

Gonzalez then moved to vacate his sentence under 28 U.S.C. § 2255, urging that Cunningham's performance was ineffective. Specifically, Gonzalez argued that Cunningham's representation that his sentence would not exceed fifteen years if he pled guilty, when the facts of the superseding indictment indicated a life sentence, coerced his plea. To that end, Gonzalez submitted an affidavit stating that Cunningham assured him he would receive a sentence of fourteen years if he pled guilty.

At the direction of the district court, Cunningham submitted an affidavit

("§ 2255 affidavit"), stating that prior to Gonzalez's plea on October 1, 1999, she informed him that the Government "was willing to enter into a plea agreement where the likely sentence would be 14–15 years," if Gonzalez would cooperate, which he refused to do. (R. at 186.) She also stated that she informed Gonzalez of the amount of time he would face if he did not cooperate; although she could not remember an exact figure, she speculated that it was "much longer" than fourteen to fifteen years. (Id.) Finally, she alleged that Gonzalez repeatedly offered her money to get a better deal with the government and suggested bribing the judge.

Also before the district court was a letter submitted by Cunningham to the Oklahoma Bar Association on June 22, 2000 in response to a complaint filed by Gonzalez shortly after he entered a plea of guilty. In this letter, Cunningham stated that she gave Gonzalez "an estimate of what his sentence would be." (R. at 146.) She also stated that "[b]ased on the initial amount of drugs reported by the government, it did appear that Gonzalez could be looking at anywhere from nine to fifteen years." (R. at 147.)

Reviewing this evidence and the change of plea and sentencing hearing, the district court first reasoned that our decision in Gonzalez I—concluding that Gonzalez's plea was knowing and voluntary—addressed all the issues raised in Gonzalez's § 2255 motion. Further, it determined there was no credible evidence

that Cunningham gave Gonzalez faulty advice to coerce a guilty plea, and that, moreover, any potentially faulty advice was rectified by the trial court when it informed Gonzalez he faced a potential life sentence. Accordingly, the district court denied Gonzalez's § 2255 petition without an evidentiary hearing. Gonzalez appealed, and we granted a COA to consider his claims.

## II

We review a district court's denial of a § 2255 motion de novo, yet we review its factual findings only for clear error. United States v. Mora, 293 F.3d 1213, 1216 (10th Cir. 2002). The denial of an evidentiary hearing in a § 2255 proceeding is reviewed for an abuse of discretion. United States v. Clingman, 288 F.3d 1183, 1187 n.4 (10th Cir. 2002).

In reviewing Gonzalez's § 2255 motion, we turn first to the Government's argument that because we held that Gonzalez's plea was knowing and voluntary for purposes of his Rule 11 claim in Gonzalez I, we may not now decide that Gonzalez's trial counsel was ineffective by coercing a guilty plea. Indeed, the district court held that Gonzalez's § 2255 petition raised "the same or similar claims as he raised on direct appeal," and that our determination in Gonzalez I—that Gonzalez's plea was knowing and voluntary—was "the law of the case." See United States v. Gonzalez, No. 99-CR-66-C, at 4 (N.D. Okla. May 2, 2003) (Gonzalez II).

-6-

For purposes of our disposition, however, no legal consequences necessarily follow from the conclusion that our Rule 11 holding is the law of the case. The doctrine of law of the case, where prior decisions by the same court are concerned, is "only a rule of practice in the courts and not a limit on their power." Pittsburg & Midway Coal Mining Co. v. Watchman, 52 F.3d 1531, 1536 n.4 (10th Cir. 1995) (quotation omitted); see also Pittsburg County Rural Water District No. 7 v. City of McAlester, 358 F.3d 694, 711 (10th Cir. 2004) ("The law of the case doctrine is not an inexorable command but a rule to be applied with good sense.") (quotation omitted). More importantly, Gonzalez raises an ineffective assistance of counsel claim in his § 2255 petition, which in accordance with our longstanding practice of considering ineffective assistance of counsel on collateral review, was not raised or ruled upon in Gonzalez's direct appeal. See United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) ("Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. . . . A factual record must be developed in and addressed by the district court in the first instance for effective review."); United States v. Edgar, 348 F.3d 867, 869 (10th Cir. 2003) (refusing to consider an ineffective assistance of counsel claim on direct appeal). Thus we have held that even where an ineffectiveness claim is raised and adjudicated on direct appeal, a petitioner may

-7-

nonetheless bring an ineffectiveness claim in a § 2255, provided that new reasons are advanced in support of that claim. Galloway, 56 F.3d at 1242–43.

Nonetheless arguing that our holding in Gonzalez I disposes of Gonzalez's ineffective assistance of counsel claims on collateral review, the Government draws our attention to an unpublished order and judgment in which a panel of this court found that the ineffective assistance of counsel claims raised in petitioner's § 2255 petition in relation to his guilty plea were "thinly disguised versions" of the same issues raised on direct appeal and, as a result, dismissed the § 2255 petition. United States v. Herrera, No. 97-6235, 1998 WL 321217, at **1 (10th Cir. June 5, 1998). However, the specific facts underlying Herrera convince us that Herrera's reasoning does not compel a similar result in the instant case. Significantly, unlike in Herrera, where the trial court held an evidentiary hearing to determine the voluntariness of petitioner's plea, Gonzalez has not received an evidentiary hearing and did not proceed on direct appeal with a full record as to ineffective assistance of counsel.

In Gonzalez I we reviewed the change of plea hearing and the sentencing hearing, the latter of which contained only Gonzalez's assertion that Cunningham had told him he would receive a fourteen-year sentence and Cunningham's response that she knew "better than to make any promises of any amount of time." (R. at 180.) Gonzalez, in his § 2255 motion, now presents a letter written by

Cunningham to the Oklahoma Bar Association stating that she initially predicted a sentence of nine to fifteen years. Gonzalez also presents Hawkins' affidavit describing Gonzalez and Cunningham's meeting prior to the change of plea. In light of this new evidence, it would be improvident of us to rely merely on our Rule 11 holding as dispositive of the issues Gonzalez raises on collateral attack. To the contrary, ineffective assistance of counsel claims are properly brought on collateral review precisely because defendants rarely are able to proceed on direct appeal with a full record as to these claims. Because we did not rule on ineffective assistance of counsel on direct appeal, and because we were unable to consider the evidence now before us, we decline to rely on our Rule 11 holding in Gonzalez I to dispose of Gonzalez's claim that Cunningham's faulty advice coerced his guilty plea.

### III

We next turn to Gonzalez's claim that the district court erred in concluding there was "no credible evidence" that Cunningham rendered ineffective assistance. See Gonzalez II, No. 99-CR-66-C, at 6. In so concluding, the district court had before it the affidavits submitted by Gonzalez, Hawkins, and Cunningham, as well as Cunningham's letter to the Oklahoma Bar Association and the transcripts of the change of plea and sentencing hearings. Relying in part on the statements in Cunningham's § 2255 affidavit that she had recommended

that Gonzalez cooperate with the Government prior to his plea, and that Gonzalez suggested bribing the court, the court concluded that Gonzalez had made "merely conclusory allegations, the facts asserted are not credible, and are contrary to the record in this case." Id. at 7. As a result, it declined to hold an evidentiary hearing on Gonzalez's claims. Id.

As is well-known, a guilty plea can only be valid if it is knowing, intelligent, and voluntary. See Rhodes, 913 F.2d at 843. An attorney's material and unfair representation of the consequences of a plea may render a plea involuntary. Laycock v. New Mexico, 880 F.2d 1184, 1186 (10th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 75 n.8 (1977)). For an attorney's representation to be constitutionally deficient, however, it must fall "below an objective standard of reasonableness." United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993) (quotation omitted).

When a defendant challenges a guilty plea based on ineffective assistance of counsel, the familiar standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), requires a petitioner to show that: (1) "counsel's performance was deficient" and marked by "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that "the deficient performance prejudiced the defense," id. at 687, such that "but for counsel's errors, [defendant] would not have pleaded guilty and would have

insisted on going to trial," Hill v. Lockhart, 474 U.S. 52, 59 (1985). Were Gonzalez able to show that Cunningham made firm and reckless assurances as to the consequences of his plea, and moreover, that he relied on those assurances in choosing to waive his right to trial, he would likely be entitled to relief. See Wellnitz v. Page, 420 F.2d 935, 936 (10th Cir. 1970) (reasoning that although a counsel's erroneous prediction of a sentence does not render a plea involuntary, a reckless promise that a specific sentence will follow a guilty plea may be deemed constitutionally ineffective assistance); see also Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986) ("Though a mere inaccurate prediction, standing alone, would not constitute ineffective assistance . . . . the gross mischaracterization of the likely outcome . . . falls below the level of competence required of defense attorneys.") (citations omitted). Gonzalez argues, among other claims,[2] that Cunningham

---

[2] Gonzalez also argues generally that Cunningham: (1) failed to provide him with a complete copy of his plea agreement in Spanish, as directed by the trial court at the change of plea hearing; (2) made no effort to discuss any defenses to the point levels, upward departures, or possible downward departures to Gonzalez's sentence; (3) never prepared a sentencing memorandum; (4) attempted to set up a meeting with the government only after Gonzalez had already changed his plea to guilty and at which point the meeting could not help Gonzalez; and (5) did nothing during the sentencing hearing to defend her client, refute any of the governments allegations regarding various sentencing enhancement, or advocate for any reductions on his behalf. We note, however, that as a result of the guilty plea, such claims are only relevant insofar as they bear upon the knowing and voluntary nature of the plea. See Tollett v. Henderson, 411 U.S. 258, 267 (1973) (reasoning that a petitioner may not raise ineffective assistance of counsel claims relating to the deprivation of constitutional rights that antedated the plea).

represented that he would receive a sentence of nine to fifteen years, when, to the contrary, the facts alleged in the indictment, including the drug amount, his leadership role, and the use of a dangerous weapon, strongly indicated a life sentence. Gonzalez further argues that because the facts in the indictment indicated that he would receive a life sentence as a result of a guilty plea, but for Cunningham's errors, Gonzalez would have opted for trial having "nothing to lose." (Appellant's Br. at 21.)

In support of his claim that Cunningham rendered ineffective assistance, Gonzalez points to Cunningham's letter to the Oklahoma Bar Association where she stated that "[b]ased on the initial amount of drugs reported by the government, it did appear that Gonzalez could be looking at anywhere from nine to fifteen years." (R. at 147.) The new information contained in this Oklahoma Bar affidavit, Gonzalez argues, not only bolsters his claim that Cunningham told him he would receive fourteen years, but also undermines (1) her later § 2255 affidavit in which she contends that her nine to fifteen year estimate was based on a rejected plea offer from the Government, and (2) her statement during the sentencing hearing that she knew better than to "make any promises of any amount of time to any client." (R. at 180.) Gonzalez also notes that Cunningham in her § 2255 affidavit does not deny Gonzalez's allegation that she never advised him of a life sentence. As to Cunningham's claim in the § 2255 affidavit that

Gonzalez offered her bribes to get a better outcome, Gonzalez proffers Hawkins' affidavit which made no mention of any such offers, and he reiterates that a translator was always required to effect communication between himself and Cunningham. Similarly, he argues that Cunningham's allegation in the § 2255 affidavit that she encouraged Gonzalez to enter into plea negotiations prior to the change of plea hearing is not corroborated by Hawkins' affidavit nor is there any other record of a meeting with an interpreter prior to October 1, 1999.

The Government counters that none of these allegations controvert a conclusion that Gonzalez's plea was knowing and voluntary and was not coerced by any misrepresentations on the part of Cunningham. Specifically, the Government points to the following: (1) Gonzalez told the court his plea was made freely and that he was satisfied with Cunningham's performance; and (2) he was told by the district court that his sentence would be determined by the Sentencing Guidelines and that his sentence could range from ten years to life.[3] It also relies on Cunningham's § 2255 affidavit, in which Cunningham states that the nine-to-fifteen year estimate resulted from a plea offer that Gonzalez rejected.

---

[3] Gonzalez concedes that the district court informed him that the statutory maximum sentence was life in prison, yet he nevertheless maintains he "had no reason to believe that the calculation of 14 years given to him by his attorney was not in fact what he would later receive under the sentencing guidelines, which the district court told Mr. Gonzalez would be followed in his case." (Appellant's Reply Br. at 11.)

-13-

Finally, the Government argues that aside from his own allegations, Gonzalez has not established that there is a reasonable probability that but for any alleged errors by Cunningham he would have gone to trial.

However, far from being convinced that Gonzalez's claims are without basis, we are instead left with numerous questions regarding the underlying facts and events. 28 U.S.C. § 2255 provides that:

Unless the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

Full consideration of Gonzalez's claims of ineffective assistance must be done with the benefit of a complete record. The district court made its determination that Gonzalez presented "no credible evidence" based primarily on the affidavits before it. However, in Machibroda v. United States, 368 U.S. 487, 495 (1962), the Supreme Court instructs that when a habeas petitioner alleges detailed and specific charges, the district court must determine whether the petitioner has carried his burden of proof "[n]ot by the pleadings and the affidavits, but by the whole of the testimony . . . . The Government's contention that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence." See also Daniels v. United States, 54 F.3d 290, 295 (7th Cir. 1995) (reversing a district court's attempt to judge the

-14-

credibility of a habeas petitioner's claim based solely on the affidavits); <u>Castillo v. United States</u>, 34 F.3d 443, 445 (7th Cir. 1994) ("[A] determination of credibility cannot be made on the basis of an affidavit.").   Of course, in a plea coercion claim such as this a complete evaluation of Gonzalez's answers to the court's questions at the plea colloquy could only be done in the context of the fully developed record.  Because Gonzalez has presented specific and detailed allegations of ineffective assistance of counsel and because the evidence before us presents controverted questions of fact and inconsistences not only as between Gonzalez and Cunningham, but also as between Cunningham's Oklahoma Bar letter and her § 2255 affidavit, we cannot determine that the record conclusively demonstrates that Gonzalez is not entitled to relief.  As a result, we hold that Gonzalez is entitled to an evidentiary hearing and **REVERSE** and **REMAND** for proceedings consistent with this order.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge

03-5118, <u>United States v. Gonzalez</u>

Anderson, Circuit Judge, concurring:

At the hearing on October 1, 1999, when the petitioner entered his plea of guilty, two things are of special note.  First, petitioner was provided with a translator and there is no indication that he was unable to understand fully the colloquy between himself and the court.  Second, the following two questions were asked, with the following answers given:

> THE COURT:  In the event you enter a plea of guilty and are found guilty, the period of imprisonment the Court would impose would be a period of imprisonment no less then ten years and it could be for life.  Do you understand that?
>
> THE DEFENDANT:  I understand.

R. at 155.

> THE COURT:  Have you in any way been forced, threatened or coerced to get you to enter a plea?
>
> THE DEFENDANT:  No, Your Honor.

<u>Id.</u> at 156.

On direct appeal, we took particular note of those proceedings, describing them as follows:

> Defendant was provided with an interpreter who translated the entire proceeding into Spanish, his native language.  The trial court was thorough and clear in its explanation of defendant's rights, including his right to a jury trial.  The court informed defendant of the charges in the indictment and confirmed that he understood those charges.  <u>The court advised him that his plea of guilty to the charges in the</u>

> indictment could result in a sentence of not less than ten years or more than life and that the court would follow the sentencing guidelines.

United States v. Gonzalez, No. 00-5083, 2001 WL 435241, at **2 (10th Cir. April 30, 2001).

Nevertheless, despite these solemn and unequivocal proceedings before the district court, which were thoroughly reviewed on direct appeal, I concur in the result and disposition reached by the majority. I feel compelled to do so partly because the stakes are so high for the petitioner (a life sentence versus an alleged promise of 15 years), and the absence of any stated reason for petitioner's willingness to plead guilty other than counsel's representations regarding sentence makes the plea problematic. The judicial costs of exploring this issue further through an evidentiary hearing are low relative to what is at stake. So, I am inclined to give the petitioner the benefit of any doubt raised with respect to the voluntariness of his plea, due to the conduct of his counsel and the apparent inconsistencies of counsel's representations regarding the advice she gave petitioner and what he was led to believe. Of course, I do not intend to express any view as to any particular outcome following further proceedings.